Jamie NEWSOM, individually and as guardian, et vir, Appellants,

v.

Joseph C. CAMP et ux., Appellees.

No. 16347.

Court of Civil Appeals of Texas.

Dallas.

May 29, 1964.

Rehearing Denied June 26, 1964.

Harris, Anderson, Henley, Shields & Rhodes, Charles O. Shields, Dallas, for appellants.

J. Alex Blakeley and Rae Ann Fichtner, Dallas, and Ralph M. Hall, Rockwall, for appellees.

BATEMAN, Justice.

This is an appeal from a judgment granting leave to the appellees, Hazel Camp and her husband, Joseph C. Camp, to adopt her minor granddaughters, Sue Ellen Scott, Norma Jo Scott and Charlotte Jean Scott. It is another phase of a rather bitter controversy between the two grandmothers of these little girls that has received the attention of certain courts in Arkansas and Texas during the past five years. See Camp v. Newsom, Tex.Civ.App., 329 S.W.2d 347, err. ref. n. r. e., and Camp v. Newsom, Tex. Civ.App., 354 S.W.2d 695. Jamie Newsom is the paternal grandmother and guardian of the persons and estates of the minors under letters of guardianship issued to her by the Probate Court of Pulaski County, Arkansas. Hazel Camp is the maternal grandmother and resides with her husband in Rockwell County, Texas, having formerly resided in Dallas County, Texas. The parents of these children both died on January 5, 1959 in Little Rock, Pulaski County, Arkansas, where they resided.

We shall summarize only those facts necessary to an understanding of the questions raised on this appeal and our disposition thereof. In August 1960, while residing in Dallas County, the appellees filed in the Juvenile Court of Dallas County a petition for adoption of the children without notice to appellants. That court granted that petition on October 3, 1960. Upon bill of review filed by appellants when they became aware of this, the adoption was set aside by order dated October 24, 1961. The Camps appealed and we dismissed that appeal because the judgment was not final. Camp v. Newsom, 354 S.W.2d 695. Subsequently, on December 4, 1962, by agreement of the parties, another order was entered in the same case again setting aside the adoption of October 3, 1960, awarding custody to the Camps subject to reasonable visitation rights of the Newsoms, enjoining Mrs. Newsom from suing in Arkansas to change custody during said period of visitation, enjoining the Camps from filing a suit to adopt said children "in any court having jurisdiction to grant said adoption" without notifying Mrs. Newsom, and providing "that all relief sought by either party not specifically

granted herein is * * * hereby specifically denied."

■ By their first two points of error on appeal the appellants attack the judgment of adoption on the ground that there was no statutory authority for it. They first cite Grant v. Marshall, 154 Tex. 531, 280 S.W.2d 559, as holding that there can be no lawful adoption in Texas in the absence of specific statutory authority. With this we agree. They then argue that our adoption statute, Vernon's Ann.Civ.St. Art. 46a, makes no provision for the adoption of a minor having no living parent or parents and that, absent a showing that they are dependent and neglected within the purview of Arts. 2330–2337, V.A.C.S., these little girls simply cannot be lawfully adopted in Texas. With this we do not agree.

Section 1 of Art. 46a provides that "any adult person may petition * * * for leave to adopt a minor child." Section 1a provides:

"Every petition for leave to adopt a minor child shall set forth among the facts relative to petitioner and the child the following information: * * * (6) what written consent papers have been obtained from the natural parent or parents and if none obtained, then specify which exception to the necessity for such consent is applicable; * *."

The pertinent portion of Section 6, relating to the consent of parents, is:

"Except as otherwise provided in this Section, no adoption shall be permitted except with the written consent of the living parents of the child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons, or if such parent or parents shall have not contributed substantially to the support of such child during such period of two (2) years commensurate with his

financial ability, then, in either event, it shall not be necessary to obtain the written consent of the living parent or parents in such default, and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile Court of the county of such child's residence; or if there be no Juvenile Court, then on the written consent of the Judge of the County Court of the county of such child's residence."

Appellants would have us construe Section 6 to mean that no adoption of a minor shall be permitted unless (1) the minor shall have a living parent or parents and (2) such parent or parents give written consent to the adoption, except that such consent will not be required in case of voluntary abandonment for two years, or failure to contribute substantially to the child's support, etc. as set forth in the section.

■■ We do not so construe the statute. In our opinion, the purpose and intent of the Legislature in enacting Section 6 was to recognize the inherent right of parents to the possession, custody, control, services and earnings of their children, and that their children should not be subject to adoption by others, so long as the parents meet the corresponding obligations of not abandoning their children to the care of others and contributing what they reasonably can to their support. That being what we conceive to have been the legislative purpose of Section 6, and there being nothing else in Article 46a to indicate an intent to limit the general authority contained in Section 1, we hold that the statute does authorize the adoption of minors who have no living parents and who are not dependent or neglected. Hardy v. Wernette, 134 Tex. 229, 134 S.W.2d 1032.

■ Appellants also contend under the second point that the order of the Juvenile Court of Dallas County dated December 4, 1962, setting aside the previous adoption of these children by the appellees was res judi-

*cata* and required the district court of Rockwall County to refuse appellees leave to adopt. We do not agree with appellants. The order was admittedly entered by agreement. It set aside the previous adoption but did not adjudicate that appellees were not legally entitled to adopt the children or that it was not then, and never could be in the future, to the best interest of the children for appellees to adopt them. It is true that the order specifically denied all relief sought and not specifically granted, but it also specifically recognized the right of appellees again to petition a court of competent jurisdiction for leave to adopt these children provided they gave proper notice to appellants. Under all of these circumstances we hold that the order of December 4, 1962 was not *res judicata* of the present action.

The first two points of error are overruled.

Under their third, fourth and fifth points of error appellants remind us that the children's original domicile was in Arkansas, where they resided with their parents at the time of the death of the parents and where the Probate Court had awarded custody of the children to appellants and appointed Mrs. Newsom as their guardian. They say that the orders of the Arkansas court are entitled to full faith and credit in Texas, and that the wrongful removal of the children by appellees from Arkansas, in violation of the express order of the Arkansas court, did not change the legal domicile of the children, and that the court below had no power to grant leave to adopt children whose legal domicile was in another state. We do not agree, for three reasons.

■■ 1. Appellees were legally domiciled in Texas and they and the girls were residing in Texas when the petition was filed. This was sufficient to give the trial court jurisdiction to authorize the adoption. Restatement, Conflict of Laws, p. 209, § 142; Art. 46a, V.A.C.S.; Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 116 A.L.R. 1293. In a case such as this the technical legal domicile of a child of tender years "is not a *sine qua non* of child custody jurisdiction on the part of our courts." Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 878, 4 A.L.R.2d 1.

■■ 2. Several things occurred since the Waco Court of Civil Appeals, in Camp v. Newsom, 329 S.W.2d 347, err. ref. n. r. e., held that Mrs. Newsom was entitled to custody by virtue of the orders of the Arkansas court, to which Texas must give full faith and credit. Chief among these was the entry by agreement of the order of the Juvenile Court of Dallas County dated December 4, 1962, more than three years after the opinion of the Waco court was handed down, wherein the Juvenile Court, by agreement of appellants, awarded custody to appellees. We must assume that the situation with respect to the children had so changed as to make appellees' custody desirable, else appellants would not have agreed to it. If it was desirable; i. e., in the best interest of the minors, the Texas court had the right and power to permit the adoption and was not bound to refuse such permission merely because the Arkansas court three years previously had awarded custody to another. "The rights and welfare of the children are the paramount things to be considered in adoption and child custody cases." Davis v. Collins, 147 Tex. 418, 216 S.W.2d 807, 811.

3. Appellants invoked the jurisdiction of the Juvenile Court of Dallas County and agreed to its judgment which, while setting aside its previous order of adoption, tacitly recognized the right of appellees to file a new petition in a court of competent jurisdiction for leave to adopt these girls. If the matter of domicile of the children were an important consideration here, we would have to hold that when they began their residence with appellees in Texas, followed by the judgment awarding custody to appellees, which judgment was agreed to by appellants and, to quote from their brief, is still "valid and subsisting," the children acquired a new domicile in Texas, thus re-

moving that objection to the validity of the judgment of adoption.

These three points are also overruled.

 By their sixth and seventh points appellants say the trial court erred in refusing to enforce the judgment of the Waco court in Camp v. Newsom, 329 S.W.2d 347, directing that the minors be returned to appellants, and in not enforcing appellants' visitation rights given them by the judgment of the Juvenile Court. From what we have said above with respect to appellants' third, fourth and fifth points, it should be obvious that we are of the opinion that appellants acquired no rights under the decision of Camp v. Newsom, 329 S.W.2d 347, or under the judgment of the Juvenile Court of Dallas County, that would transcend the welfare and best interests of the children. The court below must be held to have found that those interests would be best served by permitting the adoption. We find nothing in the record to require a contrary finding or even to suggest a lack of support therefor in the evidence. Hence, appellants' sixth and seventh points are overruled.

 In their eighth point of error appellants recognize the rule that the best interest and welfare of the children are of paramount importance in the decision of cases such as this, but assert that granting the adoption was not in the best interest of the minors because (1) appellee Joseph Camp falsely swore in the petition that he was their grandfather, while in fact he is only a "step-grandfather"; (2) appellees, aged 59 and 45, respectively, are too old to become adoptive parents; (3) the girls were not abandoned, although appellees swore in the petition that they had been; and (4) appellees were actually not bona fide residents of Rockwall County, having purported to move there to avoid the previous ruling of the Juvenile Court of Dallas County that these children were not adoptable unless declared dependent and neglected. These evidentiary matters were all presented to the trial court, who impliedly found, on the only ultimate issues in the case, that under all the circumstances appellees were suitable persons to become the adoptive parents of these little girls and that such would be in their best interest. There was ample evidence to support such implied findings and we have no authority to disturb them. The eighth point is also overruled.

The judgment appealed from is

Affirmed.

WILLIAMS, J., not sitting.